**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

LONNIE COTTON,
et al.,

      Plaintiffs,                 CIVIL ACTION NO. 06-CV-15208-FL

vs.

                                      DISTRICT JUDGE PAUL V. GADOLA

TIMOTHY R. SASSAK,          MAGISTRATE JUDGE MONA K. MAJZOUB
et al.,

      Defendants.
_____/

**REPORT AND RECOMMENDATION**

**I.**      **RECOMMENDATION:** The Motions for Summary Judgment filed by Defendant Cadez (docket no. 61) and Defendants Sassak, Friarson, and Herring (docket no. 74) should be **GRANTED IN PART AND DENIED IN PART** as set out below:

      Count I–Grant summary judgment in favor of all Defendants except Defendant Sassak.

      Count II–Grant summary judgment in favor of only Defendant Herring.

      Count III–Grant summary judgment in favor of Defendants Herring and Friarson.

      Count IV–Grant summary judgment in favor of all Defendants.

**II.**      **REPORT:**

This matter comes before the Court on the Motions for Summary Judgment filed by Defendants Cadez, Sassak, Friyerson,[1] and Herring. (Docket nos. 61, 74). Plaintiffs have filed a Response. (Docket no. 90). These matters have been referred to the undersigned for consideration.

---

[1] The proper spelling of this name is Friarson. (Docket no. 74).

(Docket nos. 67, 76). This Court heard oral argument on the motion filed by Defendants Sassak, Friarson, and Herring on June 25, 2008. The Court dispenses with oral argument pursuant to E.D. Mich. LR 7.1(e) on the motion filed by Defendant Cadez. These matters are now ready for ruling pursuant to 28 U.S.C. § 636(b)(1)(B).[2]

A.  **Factual Background**

This is an action pursuant to 42 U.S.C. § 1983 arising from the execution of a search warrant by Defendants on the residence occupied by Plaintiffs on the morning of Saturday, November 29, 2003 in Ecorse, Michigan. Defendant police officers Sassak, Friarson, and Herring were employed by the Ecorse Police Department while Defendant Cadez was employed by the Melvindale Police Department. (Docket nos. 3, 61). Defendants Sassak and Cadez worked together as part of a multi-agency narcotics unit. (Docket no. 61 at 10-11). Officers Friarson and Herring were uniformed officers called in especially to assist in the service of this warrant.[3]

There were no charges filed against Plaintiffs as a result of this search. The parties disagree on whether any illegal drugs were found during the search. Plaintiffs are mother and son. Their grandson/nephew "Tony" had come to Plaintiffs' home for Thanksgiving two days before the raid. (Docket no. 90 ex. 18). When Tony was ready to leave he noticed that his car had a flat tire and borrowed his grandmother's van so that he could get to work the next day and left his car behind. (*Id*.). Tony previously lived at the residence that was searched. (*Id*.). Plaintiffs allege that Defendants fabricated the facts supporting the search warrant for their home because Defendant

---

[2] Although there is an outstanding Motion for Contempt filed by Plaintiffs (docket no. 95), there is no showing by the appropriate method that a ruling on this summary judgment motion should be delayed until after that motion is ruled upon. *See Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004).

[3] Defendant Shaw, the Chief of the Ecorse Police Department, is a Defendant in this action. However, at the June 25, 2008 hearing Plaintiffs' counsel stated that Defendant Shaw would be dismissed as a Defendant.

Cadez had earlier threatened to put Tony in jail after Tony attempted to run away with Cadez's son. (Docket no. 90 at 20-21). Plaintiffs believe that Defendant Cadez or another Defendant saw Tony's vehicle parked at the Plaintiffs' residence and applied for the warrant to try to obtain evidence against Tony. (*Id*.). Tony had also allegedly refused to cooperate with Defendants in their drug investigations. (*Id*.). Defendants impounded Tony's vehicle during the search after allegedly finding illegal drug residue in the vehicle. (Docket no. 74 ex. C).

**B.     Claims**

Plaintiffs' Amended Complaint includes five counts against Defendants. (Docket no. 3). They allege first that Defendants violated their Fourth Amendment right to be free from unreasonable searches by obtaining and executing a search warrant that lacked probable cause. (*Id*. at 10-11). Specifically, Plaintiffs allege that Defendant Sassak lied to the state court judge about his surveillance of the residence and seeing short visits to the residence indicative of drug trafficking and about the garbage "pulls" from the residence which allegedly resulted in the discovery of marijuana residue.[4] (*Id*.). All Defendants allegedly knew that Officer Sassak lied to obtain the warrant and thus executed a warrant that they knew lacked probable cause. (*Id*.).

In Count Two Plaintiffs allege another Fourth Amendment violation because Defendants allegedly failed to knock and announce before entering their residence to execute the search warrant. (Docket no. 3 at 11-12).

Plaintiffs allege in Count Three that Defendants violated their Fourth Amendment rights by conducting an unreasonable search marked by excessive force. (*Id*. at 12-13). Specifically,

---

[4] Plaintiffs do not attack the remaining basis for the search warrant, that Defendant Sassak received an anonymous tip by phone on November 4, 2003 that the occupants of the residence were selling narcotics from within the location, but allege that the anonymous tip alone does not establish probable cause. (Docket no. 90 at 19).

Plaintiffs contend that Defendants broke down their front door without allowing sufficient time to answer; failed to identify themselves; wore riot gear and disguises; pointed weapons at them; caused Plaintiff Cotton to hold his hands over his head for an extended period of time; subjected Plaintiffs to extended brow beating, verbal assaults, and profanities; attempted to coerce confessions without advising of rights; and intentionally and unnecessarily destroyed Plaintiffs' home and property. (*Id.*).

In Count Four Plaintiffs allege violations of their Fifth and Fourteenth Amendment due process rights as a result of the allegedly intentional and reckless destruction of property in their home during the search. (Docket no. 3 at 13-14).

Count Five is a state law claim of gross negligence. (Docket no. 3 at 14-15). This Count has already been dismissed without prejudice. (Docket no. 4).

**C.     Standard**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. (*Id.*). A mere scintilla of evidence is insufficient to defeat a supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### D. Analysis

#### 1. Due Process

Defendants argue that Plaintiffs' claims of due process violations are not cognizable because their claims of an unreasonable search must be analyzed under the Fourth Amendment. (Docket no. 74 at 20-21). Plaintiffs did not respond to this argument or further address their due process claims in their Response. (Docket no. 90). The Sixth Circuit has stated that the Fourth Amendment "objective reasonableness" analysis should be used in excessive force cases involving unreasonable searches or seizures rather than a substantive due process analysis. *Darrah v. City of Oak Park*, 255 F.3d 301, 305-06 (6th Cir. 2001). Plaintiffs allege an unreasonable search in this action. Therefore, the proper analysis is under the Fourth Amendment. Plaintiffs' claims of due process violations should be dismissed. *Skover v. Titchenell*, 408 F. Supp. 2d 445, 452 (E.D. Mich. 2005) (merging counts for violation of Fifth and Fourteenth Amendments for damage incidental to search into count for unreasonable search and seizure under Fourth Amendment). Defendants should be granted summary judgment on Plaintiffs' Count Four.

#### 2. Probable Cause Supporting the Search Warrant

Plaintiffs do not dispute that facially the search warrant is supported by probable cause. (Docket no. 90 at 18). Their argument is that the facts alleged in the affidavit supporting the warrant are false, and therefore the warrant lacks probable cause. (*Id*.).

Defendant Sassak is the only officer named in the affidavit for the search warrant. (Docket no. 90 ex. 3). He swore to the information in the affidavit. (*Id*.). His signature is the only signature of an officer appearing on the warrant. (*Id*.). Plaintiffs point to two deposition statements of Defendants Sassak and Cadez to support the theory that Defendant Cadez assisted Defendant Sassak

in preparing the search warrant. Defendant Sassak stated that he and Defendant Cadez were partners and answered affirmatively to counsel's question concerning whether he and Defendant Cadez "jointly were involved in the surveillance and the procurement of the warrant." (Docket no. 90 ex. 5 at 20). Although there is evidence that Defendant Cadez assisted Defendant Sassak in the surveillance of the residence and the trash pulls, Defendant Sassak testified that Defendant Cadez did not write any of the information that went into the affidavit and that all of the information came from him, Defendant Sassak. (*Id.*). Defendant Cadez testified that he did not recall whether he participated in obtaining the search warrant but knows that he did not sign it. (Docket no. 90 ex. 6 at 26, 28).

Given Defendant Sassak's statements that all of the information in the affidavit came from him and that he authored and swore to the affidavit, the general statement that he and Cadez jointly were involved in "the procurement of the warrant" can only mean that Defendant Cadez assisted Defendant Sassak in the surveillance activity and trash pulls. Plaintiffs have presented no evidence implicating Defendant Cadez in providing information for the warrant or in writing or swearing to the affidavit supporting the warrant. Plaintiffs also have not presented any evidence that Defendant Cadez, or any other Defendant, knew that Defendant Sassak lied in the affidavit for the warrant. Under these facts, only Defendant Sassak is liable for any falsehoods in the search warrant affidavit.

Defendant Sassak testified that he conducted surveillance on Plaintiffs' residence beginning within three days of receiving the anonymous tip that the occupants were selling narcotics. (Docket no. 90 ex. 5 at 25). He stated that he viewed the residence from 300 yards away while parked across the street on Outer Drive. (*Id.* at 26). Defendant Sassak testified that Defendant Cadez was with

him every time he conducted surveillance. (*Id*.). Defendant Cadez testified that he conducted surveillance before the execution of the warrant. (Docket no. 90 ex. 6 at 25).

Plaintiffs attempt to present evidence showing that Defendant Sassak lied when he swore in the search warrant affidavit that he conducted surveillance of their residence and found illegal drugs in their trash. (Docket no. 90 at 19). First, Plaintiffs point out that there are no surveillance logs showing the surveillance. However, Defendant Sassak testified that he never used such a log when he conducted surveillance. (Docket no. 90 ex. 5 at 28). Plaintiffs have not shown that this statement is false. Plaintiff Cotton in his affidavit states that there is no place to park on Outer Drive and that at the time of the search a large tree obstructed the view of his home from Outer Drive. (Docket no. 90 ex. 7). Plaintiffs have not shown, however, that there is no place to park on Outer Drive 300 yards away from their residence. Likewise, Plaintiffs have not shown that from 300 yards away the tree would obstruct the view of the residence such that the observations noted in the search warrant affidavit were not possible. The Court notes that the search warrant was executed in November when most trees (and particularly the type shown on Plaintiffs' exhibit 15 to docket no. 90) would not have leaves on them to obstruct the view.

Plaintiffs also rely on two letters from neighbors stating that they did not notice any heavy traffic or traffic other than by family at the residence from November 10 to 26, 2003. (Docket no. 90 exs. 16, 17). However, neither of these letters is sworn under penalty of perjury. These letters therefore are not properly considered on this motion. *See Carter v. Western Reserve Psychiatric Habilitation Ctr.*, 767 F.2d 270, 273 n.2 (6th Cir. 1985) (unsworn affidavits do not comport with requirements of Fed. R. Civ. P. 56). Plaintiff Cotton testified that he did not have any friends visit him at the residence but that his mother had friends that visited her. (Docket no. 90 ex. 7 at 34).

The only other evidence Plaintiffs rely upon to establish a genuine issue of material fact on surveillance is the lack of evidence supporting the Defendants' statements that the surveillance was conducted.

In addition, the person who supposedly had the grudge against Tony Cotton was Defendant Cadez and not Defendant Sassak. Although these two officers worked together on cases, there is no evidence that Defendant Cadez and Sassak conspired to conduct a search based on fabricated evidence to retaliate against Tony Cotton. Defendant Sassak testified that Defendant Cadez never mentioned any relationship with or knowledge of the Cottons. (Docket no. 90 ex. 5 at 19).

Plaintiffs' burden is to present significant probative evidence showing that a genuine issue of material fact exists for trial. On the issue of whether Defendants conducted surveillance, Plaintiffs have failed to carry this burden. Plaintiffs have not presented any direct evidence tending to show that no surveillance occurred. They have not presented any evidence tending to show that Defendant Sassak lied about this activity in his search warrant affidavit. The evidence they have presented is generalized, weak, circumstantial evidence tending to show that the visits Defendant Sassak reported viewing were not possible. A jury could not reasonably conclude that no surveillance occurred and that Defendant Sassak lied in the search warrant affidavit based on such evidence.

Turning now to the evidence of the Defendants' collection of the Plaintiffs' garbage, Defendant Sassak testified that he and Defendant Cadez collected the garbage from in front of Plaintiffs' residence, between the curb and sidewalk, on November 21, 2003 (three bags) and November 28, 2003 (two bags). (Docket no. 90 ex. 5 at 38-44). He further testified that they recovered black, 20-gallon bags and inside were cellophane bags (sandwich sized bags) containing

seeds, stems, and green leafy material and papers with Plaintiffs' address on them. (*Id*.). The material recovered in both pulls tested positive for the presence of THC, the active ingredient in marijuana. (*Id*. at 74-80). Defendant Sassak said that he kept the evidence but now cannot locate any of the contraband he found in the trash pulls. (*Id.* at 41-44). Defendant Cadez testified that he did not recall participating in the trash pulls. (Docket no. 90 ex. 6 at 26).

Plaintiffs submitted affidavits denying that there was any marijuana in their trash. (Docket no. 90 exs. 7, 10). Plaintiff Cotton states in his affidavit that he and his mother always shredded their "personal documents and junk mail" before throwing it away in the trash, which calls into question the veracity of Defendant Sassak's statement that he found address information in the garbage he collected. (*Id*. ex. 7). Plaintiff Cotton also stated that he and his mother only used white, 13 gallon bags for the trash that they placed out on the curb. (*Id*.).

The Court finds that a genuine issue of material fact exists on the issue of whether Defendants found marijuana in Plaintiffs' trash. The evidence conflicts on whether Defendants searched the trash bags disposed of by Plaintiffs, given the difference in size and color, and on whether Defendants could have seen Plaintiffs' address on the papers in the garbage. If jurors believe that Defendants fabricated this evidence of marijuana in Plaintiffs' trash, the jurors could also find that the inclusion of the information in the search warrant affidavit was an intentional effort to mislead the judge.

When this information is omitted from the search warrant affidavit, the only information remaining which implicates Plaintiffs is the anonymous tip and the unusual traffic seen during the surveillance. The tip was from an unknown person which makes a determination of its reliability impossible. The information included in the affidavit from this tipster was simply that "there is a

lot of vehicle traffic at the above listed location and that the occupants of the residence are selling narcotics from within the location." (Docket no. 90 ex. 3). There is no indication of when the tipster observed this vehicle traffic or the narcotics sales. The affidavit also states that Defendant Sassak set up periodic surveillance from November 10th through the 28th and "observed high amount of vehicle and pedestrian traffic at the listed location." (*Id*.). Defendant Sassak further stated that "persons would enter listed location and stay a short period of time, exit the location and leave." (*Id*.). This is not sufficient information to support a finding of probable cause or even a good faith belief in probable cause. *See United States v. Snipes*, 444 F.Supp.2d 1203 (M.D. Ala. 2006) (no probable cause based on information from informant whose reliability was unknown and officer's observation of unusual traffic coming and going at suspected burglar's home), *aff'd*, 244 Fed. App'x 952 (11th Cir. Aug. 2, 2007). Therefore, summary judgment should not be granted to Defendant Sassak on Count One. *See Hale v. Kart*, 396 F.3d 721, 727 (6th Cir. 2005) (if omissions to affidavit are critical to finding of probable cause, must deny qualified immunity).

### 3. Knock and Announce

Absent exigent circumstances, it is unreasonable and thus a Fourth Amendment violation for officers to enter a residence without first knocking and announcing their intent to enter. *Wilson v. Arkansas*, 514 U.S. 927, 934 (1995). There is no claim of exigent circumstances in this case. The officers who are part of the initial entry team are liable if there was an unreasonable entry. *Aquisto v. Danbert*, 1988 WL 661145 (6th Cir. Sept. 1, 1998) (unpublished). The evidence conflicts on whether Defendants knocked and announced their intention to enter the residence before they entered. Defendant Sassak testified during his deposition that he knocked and announced and waited four to five seconds before breaking down the door. (Docket no. 90 ex. 5 at 49, 60). Defendant

Cadez had no specific recollection of executing the search warrant. (Docket no. 90 ex. 6 at 37). He assumed that they knocked and announced but had no specific recollection of it. (*Id*.). Officer Friarson did not recall during his deposition whether anyone knocked and announced. (Docket no. 90 ex. 13 at 20). Officer Herring testified that he was not on the scene when the main group entered through the door. (Docket no. 90 ex. 12 at 12). He was on patrol, was dispatched to the scene, and arrived after the search had begun. (*Id*.).

Plaintiff Truesdale testified that she was on the couch with her head about two and a half feet away from the door at the time Defendants entered her residence. (Docket no. 90, ex. 2 at 95-97). She did not hear a knock. (*Id*. at 159). There is some discrepancy in her testimony about whether she was asleep at the time. She first stated that she "had just went to sleep" when Defendants entered and woke her up. (*Id*. at 103-04). But a short time later she testified that she was trying to get to sleep when Defendants entered and apologized for not being precise in her earlier testimony.[5] (*Id*. at 105). The Court finds that Plaintiff Truesdale's testimony, whether or not she was asleep at the time, creates a genuine issue of material fact on whether Defendants knocked and waited a reasonable time before entering. Therefore, summary judgment should be granted only to Defendant Herring on this issue. The undisputed evidence is that he was not on the scene when Defendants made the initial entry into the residence. *See Aquisto*, 1988 WL 661145 (officer in back yard at time of entry but who entered house at some point not liable for unannounced entry).

    **4.**    **Excessive Force**

Plaintiffs claims that Defendants used excessive force when they executed the search warrant by pointing weapons, threatening to shoot, using bad language, insulting them, and verbally

---

[5] Plaintiff Cotton testified that he was asleep in a back bedroom at the time the Defendants entered. (Docket no. 90 ex. 1 at 51-52). His testimony therefore does not shed light on whether the Defendants knocked before entering.

threatening them. (Docket no. 90 at 25). As stated earlier, the Fourth Amendment's reasonableness requirement applies in this action. *Graham v. Connor*, 490 U.S. 386 (1989). The relevant factors are the severity of the crime at issue, whether the plaintiff posed a threat to anyone, and whether the plaintiff was attempting to escape or resist arrest. (*Id*. at 395-97). The amount of force used is excessive if the officer's actions, in light of the totality of the circumstances, were not objectively reasonable. (*Id*.). The Sixth Circuit has found that it may be unreasonable for officers to train weapons on persons at the scene of a search who do not act in a way that gives rise to safety concerns. *Elliot v. Lator*, 2006 WL 1806475 (E.D. Mich. June 28, 2006). In addition, the Sixth Circuit found that a jury question was presented on the allegation of excessive force used during a raid in a gentleman's club when a plainclothes officer pointed weapon at club patron and ordered him to get on the floor. *Davis v. Bergeon*, 1999 WL 591448, slip copy at *5 (6th Cir. July 27, 1999) (business under investigation for possible gambling, drug trafficking, underage drinking).

The facts are in dispute as to what happened when Defendants were executing the search warrant at the Plaintiffs' residence. Plaintiff Cotton testified during his deposition that when he woke up there were two men with masks and guns at his bed telling him to "put your fucking arms up, and don't fucking move, or I'll shoot you." (Docket no. 90 ex. 1 at 54). The officers had him still at gunpoint and instructed him to walk through the hallway into the living room. (*Id*. at 58). The officers forced him to hold up his hands for ten to fifteen minutes. (*Id*. at 59). These two officers were Defendants Cadez and Sassak. (*Id*. at 105-06). Plaintiff Truesdale testified that five or six officers pointed their weapons at her when they first entered the residence, but after that time only Defendant Sassak pointed his weapon at her. (Docket no. 90 ex. 2 at 173-74). She also testified that the officers made her son keep his hand up for "quite a while" and that Defendant

Cadez pointed his weapon at her son. (*Id*. at 169-72). Although Defendant Cadez was "polite" to her, Plaintiff Truesdale testified that Defendant Sassak continually made comments such as calling her a "motherfucker" and a "motherfucking drug dealer." (*Id*. at 134-36). Defendant Sassak denied ever pointing his weapons at any occupant of the residence. (Docket no. 90 ex. 5 at 52-53). Defendant Sassak also denied wearing a mask during the search, requiring the occupants to keep their hands raised, and using any threatening or offensive language toward the occupants. (*Id*. at 56-58).

The Court finds that Plaintiffs have presented sufficient evidence to create a genuine issue of material fact on whether Defendants Sassak and Cadez used excessive force in their execution of the search warrant. There is no evidence of any specific threats to the officers or of anyone resisting arrest during this search. As for the two uniformed officers, Defendants Herring and Friarson, Plaintiff Truesdale testified that they "didn't have anything to do with it, just stood at the door." (Docket no. 90 ex. 2 at 107). These officers were "real nice" and "didn't open their mouth." (*Id*. at 148). Plaintiffs have not shown that these officers actually used excessive force. In order to hold them liable for their fellow officers' use of excessive force Plaintiffs must show that they knew that excessive force was being used and had both the opportunity and the means to prevent the harm from occurring. *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). The evidence is that Defendants Sassak and Cadez were alone with Plaintiff Cotton in his bedroom. Defendants Herring and Friarson may not be held liable for any excessive force committed there. Also, although the officers were stationed at the door in the living room, there is no showing that they had knowledge of any excessive force applied there which they could have prevented. Accordingly, summary judgment

should be granted to Defendants Herring and Friarson on Count Three but denied as to Defendants Sassak and Cadez.

### III. NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: July 8, 2008          s/Mona K. Majzoub
         MONA K. MAJZOUB
         UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 8, 2008, by electronic and/or ordinary mail.

                                                  s/D. Opalewski for Lisa Bartlett
                                                  Case Manager