UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LONNIE COTTON and DELORES T.
TRUESDELL,

         Case No. 2:06-cv-15208

         Plaintiffs,

         HONORABLE STEPHEN J. MURPHY, III

v.

CORPORAL TIMOTHY R. SASSAK,
Officers FRIANSON and HERRING, DAN
CADEZ, and JOHN DOES I-X,

         Defendants.

_____/

**ORDER DENYING DEFENDANTS' MOTION** (document
no. 119) **TO SET ASIDE THIS COURT'S ORDER GRANTING
PLAINTIFFS' MOTION FOR SANCTIONS, AND IMPOSING SANCTIONS
FOR FAILURE TO COMPLY WITH THE COURT'S DISCOVERY ORDERS**

This is a civil-rights lawsuit in which the plaintiffs claim that the defendants, police officers in the City of Ecorse, Michigan and surrounding communities, acted unlawfully during the preparation for and execution of a search warrant and "raid" on plaintiffs' home. The facts of the case are set forth in the Court's Opinion and Order of June 15th, 2009, document no. 127, and need not be repeated in full here. In short, defendant Sassak obtained a search warrant for the plaintiffs' home based on an affidavit in which he swore that:

(1) The police had received an anonymous telephone tip on November 4th, 2003, that there was "a lot of vehicle traffic" at the address where plaintiffs lived, and that the narcotics were being sold from there;

(2)  Sassak set up surveillance of the house between November 10th and November 28th, 2003, and observed vehicle and pedestrian traffic, along with short-term stays in the house by visitors, which were consistent with drug sales;

(3) He picked up the plaintiffs' garbage bags from their curbside on November 21st, and November 28th, 2003, and both times found marijuana residue inside.

The search warrant issued on November 28th, 2003, and around 6:00 AM the next morning, approximately eight officers raided the plaintiffs' house.  Plaintiffs allege that during the raid the defendants violated the Fourth Amendment in various ways, including by failing to knock and announce their presence before breaking in the door, repeatedly pointing their guns at plaintiffs despite being offered no opposition, and repeatedly hurling extremely profane threats and other abuse at plaintiffs.

In November of 2006 plaintiffs filed this lawsuit, claiming that defendants violated their Fourth Amendment rights as described above.  Plaintiffs also claim that defendant Sassak must have lied in his affidavit in support of the warrant application.  Plaintiffs give three reasons for this accusation.  First, they deny that there has ever been marijuana in either their home or their trash.  Second, they state that they regularly shredded all mail and other documents before throwing them out, so that Sassak could not possibly have found mail addressed to them in the trash bags.  Finally, in discovery Sassak stated that the trash bags he pulled were black 20-gallon bags, whereas the plaintiffs claim that they used smaller white trash bags exclusively.

On February 20th, 2008, the plaintiffs filed an amended motion, which in relevant part asked the Court to compel each of the defendants in this case to respond to discovery requests served upon them.  Specifically, plaintiffs sought responses to a set of interrogatories and to a request for production of physical evidence.  Document no. 65.

The defendants Sassak, Friarson, and Herring[1] did not file a response to this motion, which on April 24th, 2008 was granted with respect to them. Document no. 87, pp. 4-5. In her order, Magistrate Judge Mona K. Majzoub required the defendants to respond without objection to the unanswered discovery requests by May 8th, 2008. *Id.*

On May 23rd, 2008, plaintiffs moved for sanctions against defendants' counsel, asserting that, despite the order, defendants have not provided any of the requested information. Document no. 95. Although plaintiffs styled their motion as one for contempt, they actually requested that the Court deem certain matters established or prohibit defendants from presenting certain evidence, pursuant to Federal Rule of Civil Procedure 37(b)(2)(i) and (ii), and that defendants' attorneys be required to pay their expenses and fees, pursuant to Federal Rule of Civil Procedure 37(c). Once again, the defendants did not respond to this motion with any court filings. It does appear that defendants delivered some of the requested information shortly after the motion was filed, but plaintiffs assert -- without contradiction from defendants -- that this production was incomplete.

During the pendency of the motion for sanctions, this case was transferred to the undersigned from District Judge Paul V. Gadola. Document no. 106. On March 24th, 2009, this Court entered an order granting the motion for sanctions as unopposed, document no. 109, but requiring further briefing on the question of what sanctions were appropriate. This finally provoked a response from the defendants, who just over a month later moved to set aside the order granting the motion. Document no. 119. In support of this motion, defendants cited a telephone conversation and letter between their counsel and plaintiffs' counsel in May of 2008, in which defense counsel asserts that "additional

---

[1] Although there are other defendants in the case, the instant motion seeks relief only from Sassak, Friarson, and Herring, as well as from their attorneys. Therefore, the words "defendants," when used herein, will refer only to these three unless otherwise specified.

discovery" had been handed over, and that plaintiff's counsel was satisfied with this discovery.    Document no. 119-2.    Defendants made no effort to explain why they completely failed to respond to a pending motion for sanctions against them for more than ten months, until the order was actually entered.    On July 30th, 2009, an additional procedural complication was added when new counsel appeared on behalf of defendants Sassak, Friarson and Herring, and their previous counsel, Mr. George Lyons, ceased his representation of them.    Despite this substitution, plaintiffs' motion for attorneys fees as against Mr. Lyons and his firm, Brandy and Lyons, remains in force.

The Court initially set defendants' motion to set aside for hearing on June 25th, 2009. At the joint request of the parties, the hearing was twice rescheduled, first for July 28th, 2009, and then for August 6th, 2009.   Although defendants' current counsel had not yet appeared on their behalf when the hearing had been set, it was nonetheless clearly marked on the docket.   *See* document nos. 120, 130-32.

The hearing finally took place on August 6th, 2009.   The Court's intention was also to hear argument on the question of what sanctions would be appropriate if the order were not set aside.   At that hearing, attorney Lyons appeared and was heard with respect to the motion for fees as against him, but no attorney appeared on behalf of the defendants.   A few minutes after the scheduled time for the start of the hearing, court staff placed a phone call to the number defendants' counsel had provided for herself to the Eastern District of Michigan.   The call was answered with a message that the number had been disconnected.

I.   Trial Sanctions

In addition to this default by the defendants, the Court's own review of the sanctions requested by the plaintiffs leads it to conclude that they are, for the most part, appropriate. Pursuant to Federal Rule Civil Procedure  37(b)(2)(A), when a party fails to obey a

4

discovery order of this Court, the Court may enter an order preventing the disobedient party from presenting related testimony or evidence at trial. The Court will enter such an order in this case, not to punish the defendants, but instead to prevent them from unfairly benefitting from their failure to produce evidence that may have -- we will never know now -- been favorable to plaintiffs.

A.  First Interrogatories to Sassak

The first discovery request to which defendants failed to respond is the plaintiffs' first interrogatories to defendant Sassak. *See* document no. 65-3. Interrogatory number 3 in this document requested a summary of the anticipated testimony of Chief George Anthony and Deputy Chief Green of the Ecorse Police Department, both of whom were listed as potential witnesses by defendants in their initial disclosures. Plaintiffs represent, without contradiction, that no such summaries have been provided. Accordingly, they request that defendants be barred from calling Chief Anthony and Deputy Chief Green as witnesses at trial.

The Court regards this request as somewhat broader than is appropriate. Plaintiffs assert that this failure to provide summaries of the chiefs' anticipated testimony somehow deprived them of the chance to depose these witnesses. There is no indication, however, that there was any genuine obstacle to some deposition of these witnesses taking place Plaintiffs had the names and addresses of the witnesses, as is revealed by the very interrogatory they cite here, and thus were at least not deprived of the chance to subpoena the chiefs and ask them questions under oath about the case. Accordingly, the Court will not altogether bar their testimony at trial. Nevertheless, the Court agrees that even if such depositions had taken place, they likely would have been made more difficult and less productive for plaintiffs due to their lack of any advance knowledge of the witnesses' likely

testimony.    As a result, there is a real danger that one or both of Chiefs Anthony and Green has knowledge relevant to this case that defendants' improper nonresponsiveness has deprived plaintiffs of the chance to discover.  The Court will not attempt to anticipate now what this knowledge may be, or whether it will be presented at trial.  If Chief Anthony or Chief Green are called as trial witnesses, however, the Court will be prepared to exclude specific portions of their testimony on this basis of unfair surprise, should the plaintiffs move for it.

Because the interrogatory in question was directed only at defendant Sassak, any restrictions on the testimony of these witnesses will likely be applicable only to him.  The Court will deal with the ramifications of this limitation when the need arises.

### B.  Second Interrogatories

Item four in plaintiffs' second interrogatories to defendants, document no. 113-4, requested contact information on, and a summary of the anticipated testimony of, each of the witness's in defendants' witness list.  Plaintiffs represent, without contradiction by the defendants, that defendants did not respond to this request.  In order to avoid unfair surprise, plaintiffs request that defendants be barred from calling at trial any witness who has not been deposed by plaintiffs.

The Court agrees that this is an appropriate remedy for defendants' nonresponsiveness.   By failing to provide contact information for these witnesses, defendants destroyed or at least significantly impaired plaintiffs' ability to depose any of them, and thus to discover possibly vital information about the case.   Although an examination of the witness list reveals that most of the proposed witnesses are police officers, *see* document no. 57, pp. 2-3, there is no indication which of the multiple police departments involved in this case each of them works for, or of which of potentially multiple

6

addresses of that police department a deposition subpoena should have been directed to. Plaintiffs should not have been required to guess at where each of these officers worked, or whether he currently worked there. Accordingly, the Court will bar defendants from calling any witnesses at trial except those deposed by the plaintiffs.

C.  First Request to Produce

The bulk of plaintiffs' request for sanctions deals with defendants' failure to respond to plaintiffs' first request for production. As noted, after plaintiffs moved for sanctions to enforce the Court's discovery orders, defendants did offer a response to this request. Plaintiffs do not maintain that this response was inadequate with respect to items 1, 6, 8, and 14 of their First Request to Produce, and they acknowledge that defendants have partially responded to item 15. Defendants offered no substantive response to items 2 through 5, 7, 9, and 11, however. The cover page of their response included a "see attached" notation next to each of these requests, document no. 113-3, but the substance of the response, which was divided by defendants into sections dealing with items 1, 6, 8, 14, and 15, included nothing that purported to respond to them, document no. 113-6. Plaintiffs also note that defendants failed to offer a substantive response to items 10, 12, and 13 in the First Request to Produce, instead stating that "[f]inding the necessary documents could be very time consuming." Document no. 113-3. There is no indication that any of these documents have since been produced, or even that defendants have made any effort to locate them.

1.  Request Number 2

In their Requests to Produce number 2, plaintiffs seek production of the any materials retrieved by Sassak in the "trash pulls" he swore to have conducted in his warrant application, as well as documentation of the chain of custody of these materials. This

7

would of course include the marijuana that Sassak claims to have found in the garbage. Defendants have not responded to this request, and plaintiffs ask that it be deemed established that such materials do not exist. The Court agrees that this is an appropriate sanction, and will deem it established that neither the contents of the asserted trash pulls nor any documentation of their chain of custody have been in the possession of any of the defendants or their employers since at least the date of the request for production. This will not prevent testimony as to the existence of these materials before that date, but plaintiffs will of course be free to use the later nonexistence of these materials to impeach that testimony, or indeed as affirmative evidence that the materials never existed at all.

2.   Request Number 3

In their Request to Produce Number 3, plaintiffs sought all documentation of the surveillance Sassak said he conducted of their house. Defendants have produced no such documentation, and plaintiffs accordingly request that the Court deem it established that none exists. The Court will do so, and deems it established that neither defendants nor their employers have had possession of such documentation since at least the date of the request for production. Again, plaintiffs may use this fact to suggest that no surveillance occurred, or to impeach testimony that it occurred or that such documentation once existed.

3.   Request Number 4

Plaintiffs' Request to Produce Number 4 seeks all documentation or evidence of the anonymous tip that Sassak stated he received. Defendants have produced no such documentation, and the Court therefore will deem it established that neither defendants nor their employers had possession of any such documents since at least the date of the request for production. Once again, plaintiffs may use this fact in an attempt to prove that the call did not occur, or to impeach testimony that it did or that it was documented.

8

### 4. Request Number 5

Plaintiffs' Request to Produce Number 5 seeks all items seized during the raid itself, and documentation of the chain of custody of those items. Plaintiffs ask that it be deemed established that no such evidence exists, and that defendants be barred from testifying that they found any contraband in plaintiffs' house. The Court will treat this item consistently with the others, however, and simply deem it established that no such evidence has been in the possession of defendants or their employers since at least the date of the request for production. Defendants may testify as to what if anything they seized from the house, but plaintiffs may again impeach this testimony by pointing out the absence of any physical evidence or documentation of such seizures, or use this absence as proof tending to show that nothing was in fact seized.

### 5. Request Number 7

Plaintiffs' Request to Produce Number 7 sought all documentation of the investigation of the citizens's complaint filed with the Ecorse Police Department against defendants after the raid. Defendants have not responded to either request, and plaintiffs request that it be deemed established that no investigation was conducted. Instead, congruently with its treatment of the plaintiffs' other requests, the Court will deem it established that no documentation of the investigation has been in defendants' or their employers' possession since at least the date of the request for production.

### 6. Request Number 9

Plaintiffs' Request to Produce Number 9 sought all documentation of any other citizens' complaints filed against defendants in the 10 years preceding the request. Plaintiffs assert that defendants did not respond to this request, but make no specific request for sanctions with regard to it. The Court will deem it established, however, that

defendants and their employers have not retained any documentation of such complaints since at least the date of the request for production. Defendants, however, shall be barred from referring to this fact as evidence that no such complaints occurred. Either side may state that it is unknown whether there were any such complaints.

       7.  <u>Requests Numbers 10, 12 and 13</u>

Plaintiffs' Request Number 10 seeks all documentation of complaints received by the police about plaintiffs' house in the 10 years preceding the request, and of any subsequent investigations. Request Number 12 seeks all documentation relating to any police runs made to their house. Number 13 seeks documentation of all complaints about, or investigations into, William Anthony Cotton, a relative of plaintiffs' who occasionally visited their house. Defendants have not provided any documents of any of these types, and as plaintiffs request, the Court will therefore deem it established that none have been possessed by defendants or their employers since at least the date of the request for production. Defendants will additionally be barred from introducing in evidence any written complaints received with respect to plaintiffs' house.

       8.  <u>Request Number 11</u>

Plaintiffs' Request Number 11 sought all photos taken during the raid. Defendants have produced none, and plaintiffs request that they be barred from introducing any at trial. The Court agrees that this is the appropriate sanction, and will so order.

       9.  <u>Request Number 15</u>

Plaintiffs' Request to Produce Number 15 contained multiple subparts, each seeking all documentation of the City of Ecorse's policies and practices with respect to the performance of specific police duties. Plaintiffs represent, without contradiction from defendants, that there have been no documents produced with respect to several of the

requested areas: (1) investigating, responding to and documenting anonymous complaints, (2) preparing for, applying for, and executing search warrants, (3) conducting narcotics investigations, (4) conducting trash pulls, (5) preserving evidence, (6) implementing the "knock and announce" rule, (7) the use of face coverings during the execution of a search warrant, (8) when police officers are required to identify themselves during the execution of a search warrant, (9) when and how police may use weapons during the execution of a search warrant, (10) proper communication with citizens, and (11) photographing the residents of a house during the execution of a search warrant. Accordingly, as the plaintiffs request, the Court will deem it established that defendants' employers have no such written policies.

        10.    Request Number 15(o)

Plaintiffs' Request Number 15(o) sought all written policies of the City of Ecorse Police Department regarding the receipt and investigation of citizens' complaints. Plaintiffs acknowledge that defendants produced documentation in response to this request, but state that the documentation incorporated by reference text from another manual that was not produced. Plaintiffs have not filed this response in the record, noting that it may be privileged or subject to a protective order, but have offered to make it available for *in camera* review. They do not request any sanctions at this time, but instead seek an order requiring defendants to produce the manual in question.

The Court is unable to assess the adequacy of a discovery response without considering the response itself. Accordingly, it will not at this time grant any relief on this portion of plaintiffs' motion. If the plaintiffs wish, they may file the defendants' response on the docket under seal or pysically produce the document for *in camera* inspection, and renew their request.

11

II.    Attorneys' Fees

Federal Rule of Civil Procedure 37(b)(2)(C) provides that, if a court sanctions a party for disobeying a discovery order, it must award the other side its reasonable expenses and fees caused by the disobedience, "unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Pursuant to the rule, this award may be taxed against the disobedient party, its attorney, or both.   Here, the defendants' proffered justification for their failure to respond to the Court's order is that they believed their production in late May 2008 had fully satisfied their obligations under the order compelling discovery, and that they did not realize that the motion for sanctions had been filed.   The Court does not find this to be substantial justification for defendants' noncompliance.   Defendants could not reasonably have believed that their May 2008 responses were complete, when  the only response to several of the plaintiffs' requests to produce was that locating the documents would be very time consuming, and when offered no documents even purporting to respond to 10 of these requests.   Defendants offer no justification at all for their failure to provide information about anticipated witness testimony.  Nor is there any substantial justification for simply failing to be aware of a pending motion for sanctions against oneself and one's clients for ten months.   Accordingly, the Court will award plaintiffs their reasonable fees and expenses.

Plaintiffs have offered evidence that their counsel spent 11.5 hours preparing the motion to compel, stipulating to various extensions in an attempt to procure the requested documents, and reviewing the Court's orders on this topic.   Document no. 113-10.   From a review of counsel's billing records, it appears to the Court that approximately two of these hours were spent withdrawing the initial motion to compel and drafting a new one, due to the fact that the initial motion was filed without exhibits.   The Court does not regard these

expenses as "reasonable." Plaintiffs also "estimate[]" that their counsel spent 10.5 hours preparing briefing on this motion. Without more specific documentation, the Court is unable to accept this number as reasonable. The Court will permit recovery for two hours of work for research and preparation of the two briefs on this motion, and another two hours for preparation for and attending the hearing on the matter, and review of this order. Should plaintiffs wish further recovery, they will be required to submit proof of additional time spent.

The total of this time thus comes to 13.5 hours. At counsel's represented rate of $250 per hour for civil rights matters, the appropriate amount of fees is therefore $3,375.

It remains to be considered who these fees should be taxed against. In their briefing on this motion, plaintiffs represented that they knew of no reason why defendants themselves should be required to pay these expenses, and therefore suggested that defense counsel instead be required to pay. Although attorney Lyons is no longer counsel for defendants, he was representing them at all times relevant to the discovery matter at issue here, and his firm is therefore the target of the plaintiffs' fees request. At the hearing on this matter, however, matters were complicated when attorney Lyons represented to the Court that the fault for his non-production of the evidence requested by the plaintiffs lay not with his firm but with the City of Ecorse, which had refused to even respond to his and his colleagues' repeated requests that information and evidence be handed over. In response, counsel for plaintiffs agreed that their fees should be taxed not against Mr. Lyons's law firm, but rather against the City itself.

The City of Ecorse has never been a party to this motion. Ecorse was not named as a defendant in this case, and the papers as filed seek fees only against counsel, or at most against counsel and the individual defendants themselves. Accordingly, the City was not represented either in the briefing or on the hearing on this motion. It is common, of course,

13

for defense counsel to employ an "empty chair defense" -- blaming fault on an absent third party in an attempt to exonerate their own clients of any wrongdoing. But even at the joint urging of both parties to a motion, it would be fundamentally unjust for a court to respond to such a defense by hunting down the "occupant" of the empty chair and penalizing it without any warning. This Court will not do so here, but instead will construe the motion as it was originally filed: for sanctions against the law firm of Brandy and Lyons.[2]

Accordingly, that firm will be required to pay plaintiffs their $3,375 in fees and costs related to this motion. Should the firm desire to pass the cost on to the City of Ecorse in the context of a billing or request for reimbursement in the context of the attorney-client relationship, the Court has neither interest nor control

## CONCLUSION AND ORDER

The American system of justice is almost unique in the world in its use of an adversary system. This system means that responsibility for seeking and producing evidence in a case lies not on the court, but on the parties, and even more so on their attorneys, who for that reason among others enjoy the distinguished title of officers of the court. It is profoundly disappointing, and a fundamental malfunction of the system, when parties and their attorneys fail to adequately fulfill this role. That has happened in this case. Because of defendants' failure to respond to plaintiffs' discovery requests, the plaintiffs were seriously prejudiced. The remedy offered here by the Court will, it is hoped, substantially redress this prejudice, but it will do so only at the expense of denying the defendant police officers the benefit of a jury trial on several important issues in this case, in which they are

---

[2] The Court notes that another attorney, sole practitioner Michael J. Sharpe, has also put in an appearance on behalf of defendants. There is no indication, however, that he was involved in this discovery matter in any way. Accordingly, the Court will not tax fees against attorney Sharpe at this time. Should any party wish to provide proof to the contrary, it may move for amendment of this order.

accused of serious misconduct.  Things should not have come to this pass, and need not have.

Beyond observing that it is unacceptable and unprofessional to permit a motion for serious sanctions against one's clients to go unresponded-to for more than 10 months, or to fail to appear at a hearing on such a motion, the Court is neither able to nor interested in apportioning the blame for this situation between the City of Ecorse and its various counsel.  But such situations cannot and must not continue to arise.  Both the plaintiffs and the defendants in this and in every case deserve better.

**WHEREFORE**, it is hereby **ORDERED** that:

Defendants' motion to set aside the Court's order granting plaintiffs' motion for contempt is **DENIED**;

At the trial of this matter, defendants Sassak, Friarson and Herring are **BARRED** from:

- Calling as a witness any person not already deposed by the plaintiffs;

- Introducing in evidence any photographs taken during the execution of a search warrant in plaintiffs' home in November 2003, or items seized during the search;

- Referring to the fact that there is no evidence of any citizens' complaints filed against any of the defendants, as tending to show that no such complaints occurred;

- Introducing in evidence any written complaints received by the City of Ecorse or its police department with respect to the plaintiffs' house;

It is further deemed **ESTABLISHED** that neither the defendants Sassak, Friarson, and Herring, nor their employers, had possession of any of the following items at any time on or after September 19th, 2007:

- Any items taken from the plaintiffs' curbside trash bags during November of 2003;

- Any documentation of such items, or of their chain of custody;

- Any documentation of surveillance of plaintiffs' house in November of 2003;

- Any documentation of a tip implicating the occupants of plaintiffs' house in drug sales;

- Any items taken from plaintiffs' house during the execution of a search warrant in November of 2003;

- Any documentation of such items, or of their chain of custody;

- Any documentation of the investigation of a citizens' complaint filed by either plaintiff with respect to the execution of a search warrant in their home in November 2003;

- Any documentation of complaints received by the police about plaintiffs' house between the dates of September 19th, 1997 and September 19th, 2007;

- Any documentation of any police visit to the plaintiffs' house during that time period;

- Any documentation of complaints about or investigations of William Anthony Cotton.

It is further deemed **ESTABLISHED** that as of November 2003, neither the City of Ecorse nor its police department had any written policy or procedure with respect to any of the following police activities:

- Investigation, responding to and documenting anonymous complaints of criminal activity;

- Preparing for, applying for, and executing search warrants, including:

    - Complying with the "knock and announce" rule,

    - Using face coverings during the execution of search warrants,

    - Identifying oneself as a police officer while executing a search warrant,

    - Brandishing or otherwise using a weapon during the execution of a search warrant,

    - Communicating with citizens during the execution of a search warrant, or

    - Photographing the occupants of a house in which a search warrant is being executed;

- Conducting narcotics investigations;

- Conduct trash pulls; or

- Preserving evidence.

It is further **ORDERED** that former counsel for defendants, the law firm of Brandy Lyons, of Detroit, Michigan, shall pay to plaintiffs the sum of three thousand three hundred seventy-five dollars ($3,375).

**SO ORDERED.**

17

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: August 7, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 7, 2009, by electronic and/or ordinary mail.

Alissa Greer
Case Manager